**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Edward FIXEN, Defendant-Appellant.**

**No. 85–1129.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 13, 1985.

Decided Jan. 17, 1986.

Brian C. Leighton, Asst. U.S. Atty., Fresno, Cal., for plaintiff-appellee.

Joel Levine, Stilz, Boyd & Levine, Los Angeles, Cal., for defendant-appellant.

Before GOODWIN, NELSON and CANBY, Circuit Judges.

NELSON, Circuit Judge:

Pursuant to a conditional plea of guilty for possession with intent to distribute cocaine, defendant Fixen appeals the district court's denial of his motions to suppress evidence and to disclose the identity of a confidential informant. We affirm the district court's order denying both motions.

## BACKGROUND

Defendant Edward Fixen was suspected of cocaine trafficking. An investigation into Fixen's activities was initiated and a confidential informant was contacted. During the course of surveillance, Fixen was observed meeting with known cocaine traffickers. Subsequently, the informant met with Fixen to arrange delivery of a quantity of cocaine. The informant advised police that Fixen's source-of-supply was a Latin male from the Los Angeles area. On May 10, 1984, Fixen was observed travelling to Los Angeles with an unknown woman later identified as Lois Wright. After eating lunch, Fixen and Wright were observed sitting on a bench until a green Volkswagen pulled up. Thereafter, Fixen and Wright drove their vehicle out of the parking lot and were followed by the Volkswagen. The two cars pulled into another parking lot and a Latin male was observed exiting the Volkswagen

and entering Fixen's car. The Latin male was carrying an attache case and a brown bag. Fixen's vehicle then departed the parking lot and drove around for a short period of time. When the vehicle returned, the Latin male exited carrying only the attache case. After Fixen returned to Bakersfield, his car was intercepted and a brown bag with approximately one kilogram of cocaine was found on the floor. Fixen was arrested for conspiracy to distribute cocaine (Count I) and possession with intent to distribute cocaine (Count III). He thereafter made incriminating statements to police.

Fixen filed a motion for disclosure of the informant's identity. This motion as well as a subsequent motion for reconsideration was denied. Fixen's motion to suppress the physical evidence and his post-arrest statements was likewise denied.

Pursuant to an agreement with the Government, Fixen entered a plea of guilty on Count III upon stipulation that he could preserve an appeal on the denial of his pre-trial motions. He now appeals to this court in hopes that we will reverse the district court's denial of his motions to suppress evidence and to disclose the informant's identity.

## ISSUES PRESENTED

I. Did the district court err in concluding that Fixen's arrest was based on probable cause?
II. Was the seizure of a brown paper bag containing cocaine from the passenger compartment of Fixen's car justified as a search incident to a lawful arrest?
III. Should Fixen's post-arrest statements have been suppressed as the fruit of an illegal arrest?
IV. Did the district court err in refusing to require the government to disclose the identity of the informant?

## DISCUSSION

I. PROBABLE CAUSE

A. *Standard of Review*

We review *de novo* the district court's determination of probable cause to support

a warrantless arrest. *Trenouth v. United States,* 764 F.2d 1305, 1307 (9th Cir.1985); *United States v. Howard,* 758 F.2d 1318, 1319 (9th Cir.1985).[1]

### B. Analysis

■ Probable cause for a warrantless arrest exists if "under the totality of the facts and circumstances known to the arresting officer, a prudent person would have concluded that there was a fair probability that the suspect had committed a crime." *United States v. Gonzales,* 749 F.2d 1329, 1337 (9th Cir.1984). *See also United States v. Woods,* 720 F.2d 1022, 1028 (9th Cir.1983).

■ In *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court reviewed a magistrate's finding of probable cause and his accompanying decision to issue a warrant. The *Gates* Court discarded the previously-utilized *Aguilar-Spinelli*[2] "two-prong" test of the reliability of informants' tips and instead adopted a "totality of circumstances" approach. Under the new analytical structure, the issuing magistrate assesses an informant's "veracity," "reliability," and "basis of knowledge" under the totality of the circumstances in determining the value of the informant's report in establishing probable cause. *Gates,* 462 U.S. at 230, 103 S.Ct. at 2328. Since "the standards applicable to the factual basis supporting the officer's probable-cause assessment at the time of the challenged arrest and search are at least as stringent as the standards applied with respect to the magistrate's assessment," *Whiteley v. Warden,* 401 U.S. 560, 566, 91 S.Ct. 1031, 1036, 28 L.Ed.2d 306 (1971), we must ascertain

whether the instant situation would at least justify a magistrate's issuance of a warrant.

The factual situation in *Gates* is similar to the case *sub judice.* In *Gates,* the following anonymous letter was received by police:

> [A] couple in your town ... strictly make their living on selling drugs. They are Sue and Lance Gates, they live on Greenway, off Bloomingdale Rd. in the condominiums.... Sue his wife drives their car to Florida, ... where she leaves it to be loaded up with drugs, then Lance flys down and drives it back.... May 3 she is driving down there again and Lance will be flying down in a few days to drive it back....
>
> They brag about the fact they never have to work and make their entire living on pushers.

\*   \*   \*   \*   \*   \*

*Gates,* 462 U.S. at 225, 103 S.Ct. at 2325. Surveillance of the couple substantially corroborated the letter's predictions, and the couple was ultimately arrested. A subsequent search yielded approximately 350 pounds of marijuana. The Court observed, however, that "[t]he letter provides virtually nothing from which one might conclude that its author is either honest or his information reliable; likewise, the letter gives absolutely no indication of the basis for the writer's predictions regarding the Gateses' criminal activities." *Id.* at 227, 103 S.Ct. at 2326. The Court further noted that the couple's travel was "as suggestive of a pre-arranged drug run, as it is of an ordinary vacation trip." *Id.* at 243, 103 S.Ct. at 2335. Nonetheless, the Court reversed the Illinois Supreme Court's decision which ob-

---

**1.** In so holding, we parenthetically note that review of a police officer's on-the-spot probable cause determination is qualitatively different from review of a magistrate's finding of probable cause and his concomitant issuance of a warrant. In the latter situation, our review is highly deferential. *Massachusetts v. Upton,* 466 U.S. 727, 104 S.Ct. 2085, 2088, 80 L.Ed.2d 721 (1984); *Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983). Because it is unrealistic to expect that police officers "remain abreast of each judicial refinement

of the nature of 'probable cause,'" *Gates,* 462 U.S. at 235, 103 S.Ct. at 2330, however, we agree with the *Trenouth* and *Howard* courts that such deference is not warranted in the former situation.

**2.** *See Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

jected to the magistrate's finding of probable cause: "[I]n this case, just as in *Draper* [*Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) ], seemingly innocent activity became suspicious in light of the initial tip." *Gates*, 462 U.S. at 243 n. 13, 103 S.Ct. at 2335 n. 13. To the *Gates* Court, the officer's corroborative efforts were dispositive: " '[B]ecause an informant is right about some things he is more probably right about other facts'; ... including the claims regarding the [defendant's] illegal activity." *Id.* at 244, 103 S.Ct. at 2335 (quoting *Spinelli*, 393 U.S. at 427, 89 S.Ct. at 594 (White, J., concurring)).

Similarly, this court, in *United States v. Woods*, 720 F.2d 1022 (9th Cir.1983), affirmed a district court's after-the-fact decision that probable cause existed when the defendant was arrested. In *Woods*, a previously reliable tipster informed police that a drug transaction was to transpire at the airport:

> [The informant] told [police] that [defendant] was approximately 32 to 33 years old with dark curly hair and was seven to eight months pregnant. Her son [who was to accompany defendant] was four to five years old. [The informant] also reported that [defendant] was going to meet a plane arriving between 12:00 and 12:30 p.m. The arriving passenger would be a woman in possession of a quantity of cocaine. [Defendant] would be carrying approximately $7,000. The transaction would take place at the airport and the woman delivering the cocaine would take a return flight that same day.

*Id.* at 1024. Surveilling the defendant, the police objectively verified the tip. The police further observed a "money show" and noted that both participants appeared to be "apprehensive." *Id.* Once again, that "[t]he informer's tip was verified by the officer's personal observations" proved determinative. *Id.* at 1027.

Fixen, however, primarily relies upon *United States v. Freitas*, 716 F.2d 1216 (9th Cir.1983). In *Freitas*, a previously reliable informant indicated two individuals were importing narcotics using a furniture company as a cover. Another reliable and unrelated informant indicated the same. Consequently, police conducted surveillance of defendants:

> [Defendants] were observed at the ... warehouse space loading furniture items into a Chevrolet van. The van departed with [one defendant] driver.... The van was observed taking a circuitous route through the area, which the surveilling agents characterized as evasive driving designed to prevent surveillance. Eventually the van returned to the warehouse. [Defendants] were observed placing a large wicker basket in the rear of the van.... FBI agents arrested [defendants] and ... found packages of cocaine in the wicker basket.

*Id.* at 1219. Significant to the *Freitas* court was the fact that "the primary evidence ... was the hearsay information provided by the informants. All of the other surveillance observations and results of investigation recited by Agent Bassett in his affidavit were innocuous, and did not establish cause to suspect criminal activity insofar as they tended to corroborate the informant reports." *Id.* at 1221. Concluding that the informant's reports had not been sufficiently detailed or corroborated, we reversed the district court's finding that probable cause existed.

The distinguishing feature between, on the one hand, *Frietas*, and, on the other, *Woods* and *Gates* appears to be the detail of the information related by the informant. In *Freitas*, we were of the opinion that sufficient detail was lacking: "Although *Draper v. United States*, ... shows that an accumulation of innocent details can sometimes sufficiently corroborate an informant's report, the report involved here was not nearly as specifically detailed as that in *Draper*; nor were the details corroborated as thoroughly as those in *Draper*." *Id.* at 1223. In *Gates*, however, "the anonymous letter contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predict-

ed." *Gates,* 462 U.S. at 245, 103 S.Ct. at 2335. *Woods* is not to the contrary: " '[T]he detailed and accurate predictions' in [the informant's] tip indicated that however his information was obtained, it was reliable." *Woods,* 720 F.2d at 1029 (quoting *Gates,* 462 U.S. at 242 n. 12, 103 S.Ct. at 2334 n. 12).

■ The instant situation seems more analogous to *Woods* and *Gates* than to *Freitas.* The combination of accurate predictions and police corroboration created a slightly richer record than that in *Freitas:* (1) Prior to discussions with the informant, Fixen was suspected of drug trafficking; (2) Fixen was observed meeting with several known cocaine dealers; (3) the informant predicted a meeting between himself and Fixen to arrange delivery of the cocaine and was so observed; (4) the informant predicted that on or about May 10, 1984, Fixen would travel to the Los Angeles area for delivery of a large quantity of cocaine and he would then return to Bakersfield, and this too was visually verified; (5) the source-of-supply was to be a Latin male; (6) on May 10, 1984, Fixen met with a Latin male; (7) the Latin male entered Fixen's vehicle with an attache case and a brown bag; (8) the vehicle drove around the vicinity a short period of time (common in effecting drug transactions); and (9) the Latin male left Fixen's vehicle with only the attache case.

The record here presents verified predictions and observed suspicious activity. Although the information which was verified would alone appear innocent, "[a] police officer's special training and experience may enable him reasonably to suspect that criminal activity is afoot from observing what might appear innocuous to the uninitiated." *Woods,* 720 F.2d at 1027. Moreover, Fixen's argument that the informant's reliability was never established is unavailing. "[A] deficiency in one [factor] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Gates,* 462 U.S. at 233, 103 S.Ct. at 2329. Here, the infor-

mant's "basis of knowledge" is very strong; he had spoken directly with Fixen several times. Therefore, the informant's tip was less likely to be a "casual rumor." True, the Government does not assert that this informant had previously proven himself reliable or accurate. Therefore, his "reliability" and "veracity" were subject to question. However, the police corroboration " 'reduced the chances of a reckless or prevaricating tale,' thus providing 'a substantial basis for crediting the hearsay.' " *Gates,* 462 U.S. at 245, 103 S.Ct. at 2335 (quoting *Jones v. United States,* 362 U.S. 257, 269 & 271, 80 S.Ct. 725, 735 & 736, 4 L.Ed.2d 697 (1960), *rev'd on other grounds sub nom. United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980)).

The district court's determination that there was a fair probability that Fixen committed a crime was correct.

## II. SEARCH INCIDENT TO ARREST

Because we affirm the district court's determination that probable cause existed, the search of Fixen's car was a permissible search incident to a lawful arrest: "[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981) (footnotes omitted). *See also United States v. Howard,* 758 F.2d 1318, 1319 & 1320 (9th Cir.1985); *United States v. Thornton,* 710 F.2d 513, 515 (9th Cir.1983). Accordingly, the district court's order denying Fixen's motion to suppress the physical evidence discovered as a result of the search of his car must be affirmed.

## III. FRUITS OF POISONOUS TREE

Fixen is correct in asserting that if probable cause is lacking his post-arrest statements must be suppressed. *Wong Sun v. United States,* 371 U.S. 471, 484–88, 83 S.Ct. 407, 415–18, 9 L.Ed.2d 441 (1963) (evidence obtained as fruits of illegal arrest may not be used against defendant); *Unit-*

ed States v. Merchant, 760 F.2d 963, 969 n. 10. (9th Cir.1985) ("evidence seized pursuant to the warrant was a 'fruit' of the original illegality, and *all* of the evidence must be suppressed") (emphasis in original); *United States v. Prim,* 698 F.2d 972, 977 (9th Cir.1983) (same). However, as we noted above, probable cause existed. The tree was therefore nonpoisonous, and the fruit which it bore harmless. Accordingly, Fixen's post-arrest statements are admissible, and the district court's denial of his motion to suppress those statements must be affirmed.

## IV. DISCLOSURE OF INFORMANT'S IDENTITY

### A. *Standard of Review*

■ The district court's denial of a motion to compel disclosure of an informant's identity is reviewed for an abuse of discretion. *United States v. Alexander,* 761 F.2d 1294, 1303 (9th Cir.1985); *United States v. Anderson,* 509 F.2d 724, 730 (9th Cir.) (where informer's testimony relates solely to probable cause, district court's denial of informer's identity is reviewed for abuse of discretion), *cert. denied,* 420 U.S. 910, 95 S.Ct. 831, 42 L.Ed.2d 840 (1975).

### B. *Analysis*

■ In *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the Supreme Court noted that protecting an informant's confidentiality serves important law-enforcement objectives. Therefore, determining whether to reveal his identity requires "balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." *Id.* at 62, 77 S.Ct. at 629. *See also United States v. Ordonez,* 737 F.2d 793, 808 (9th Cir.1984). "Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstanc-

es of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Roviaro,* 353 U.S. at 62, 77 S.Ct. at 629.

■ Although the informer's privilege must give way where the disclosure of the informant's identity "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause," *Id.* at 60–61, 77 S.Ct. at 628, the burden is on the defendant to demonstrate the need for the disclosure. *Alexander,* 761 F.2d at 1303; *United States v. Kelly,* 449 F.2d 329, 330 (9th Cir.1971).

■ Fixen argues that the informant's identity must be disclosed so as to enable him to prove "that the probable cause is lacking...." It is well-settled, however, that "a trial court need not require federal agents to disclose the identity of a reliable informant where the sole ground for seeking that information is to establish the existence of probable cause for arrest." *United States v. Mehciz,* 437 F.2d 145, 149 (9th Cir.), *cert. denied,* 402 U.S. 974, 91 S.Ct. 1663, 29 L.Ed.2d 139 (1971).[3]

■ Fixen's request for disclosure expresses his concern that there may not have been an informant or that the police lied as to the information related to them. Of course, an *in camera* hearing could have served to allay these fears:

The *in camera* procedure provides an equally-acceptable accommodation of the competing interests of the Government and the accused in the situation presented here, wherein the question is whether a law enforcement officer has lied. Through disclosure of the informer's identity to the trial judge, and such subsequent inquiries by the judge as may be necessary, the Government can be pro-

**3.** *See also McCray v. Illinois,* 386 U.S. 300, 311, 87 S.Ct. 1056, 1062, 18 L.Ed.2d 62 (1967) ("Much less has the Court ever approached the formulation of a federal evidentiary rule of compulsory disclosure where the issue is the preliminary one of probable cause, and guilt or innocence is not at stake"); *United States v. Marshall,* 526

F.2d 1349, 1359 (9th Cir.1975) (no right to disclosure of informant "who provided only information which, combined with other facts, gave the officers probable cause to arrest"), *cert. denied,* 426 U.S. 923, 96 S.Ct. 2631, 49 L.Ed.2d 376 (1976); *United States v. Bolton,* 458 F.2d 377, 378 n. 5 (9th Cir.1972) (same).

tected from any significant, unnecessary impairment of secrecy, yet the defendant can be saved from what could be serious police misconduct.

*United States v. Moore,* 522 F.2d 1068, 1072–73 (9th Cir.1975), *cert. denied,* 423 U.S. 1049, 96 S.Ct. 775, 46 L.Ed.2d 637 (1976), *quoted with approval in, United States v. Kiser,* 716 F.2d 1268, 1273 (9th Cir.1983). Nonetheless, a district court need not conduct an *in camera* hearing whenever the identity of an informant is requested. *United States v. Kerris,* 748 F.2d 610, 614 (11th Cir.1984). Rather, it is within the judge's discretion whether to hold such a hearing, *id.,* and a decision denying a defendant's request for an *in camera* proceeding should be overturned only if there is an abuse of discretion. *Id.* *See also Anderson,* 509 F.2d at 729.

■ Applying these precepts to the instant situation, we hold that the district court did not abuse its discretion in denying both disclosure of the informer's identity and an *in camera* hearing. As the district court noted, "defendant Fixen's motion to obtain disclosure of the informant only went to the disclosure of the identity of the informant." Fixen did not allege facts which would indicate that such disclosure was "essential to a fair determination of [his] cause." *Roviaro,* 353 U.S. at 60–61, 77 S.Ct. at 628. Accordingly, he did not overcome his burden, and the judge could therefore justifiably consider an *in camera* hearing to be unnecessary.

## CONCLUSION

We affirm the district court's determination that probable cause existed at the time of Fixen's arrest. We similarly affirm the court's concomitant holdings that the search was a lawful incident thereto and that his post-arrest statements were likewise admissible. Finally, we affirm the trial court's denial of Fixen's motion to disclose the identity of the government's informant.

AFFIRMED.