UNITED STATES of America, Plaintiff-Appellant,

v.

Dennis B. MOSES, Defendant-Appellee.

No. 85–1349.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 12, 1986.

Decided Aug. 5, 1986.

---

Gloria C. Phares, Dept. of Justice, Washington, D.C., for plaintiff-appellant.

Robert Holley, Asst. Federal Public Defender, Sacramento, Cal., for defendant-appellee.

Before SNEED, FARRIS and FERGUSON, Circuit Judges.

SNEED, Circuit Judge:

The United States appeals from the district court's suppression of a car trunk key found in defendant Dennis Moses' pocket. The district court found that the government agents lacked probable cause to arrest Moses and that the key would not have been inevitably discovered. We reverse and remand.

# I.

## FACTS AND PROCEEDINGS BELOW

On the afternoon of July 25, 1985, officers of the Sacramento Countywide Narcotics Task Force, the California Bureau of Narcotics Enforcement (BNE), and other state and federal agencies began their surveillance of several people suspected of manufacturing phencyclidine (PCP). The officers observed Moses, Robert Dorris, and Jose Flores purchasing chemicals consistent with the manufacture of PCP at Grau-Hall Chemical Company. The three suspects then drove away in a 1983 Ford. The officers followed the suspects to a Super 8 Motel and then to a grocery store, where the three men bought five bottles of distilled water. The caravan moved on to a drugstore, where Moses and a woman purchased four 32-gallon trash cans, a funnel, a mop handle, and some strainers; Moses paid for the items. The suspects then brought the purchased items to Dorris' house at 7381 Alcedo Circle in Sacramento.[1] Officers followed the Ford to the Super 8 Motel, where it remained throughout the night.

At approximately 9:30 a.m. on June 26, BNE Agent McIntyire, the case agent for the investigation, obtained search warrants for Dorris, for Dorris' house, for a 1976 Cadillac that had also been followed, and for the 1983 Ford. McIntyire testified that she did not obtain a warrant for Moses at that time because she did not know his identity. *See* Reporter's Transcript (R.T.) at 128–29.

The officers had planned to execute the search warrant for the Ford while detaining its occupants at the motel, but the occupants drove away, heading toward Dorris' residence. At this time, Flores drove the Ford, Moses rode in the front on the passenger side, and two women rode in the back. Two cars followed the Ford. In one car was Agent Hegseth of the Sacramento Sheriff's Office, and two DEA agents were in the other. As the Ford

---

**1.** One month earlier, officers had detected vapors of ether and other solvents at Dorris' residence, and he had been cited for illegal disposal of hazardous waste.

approached Dorris' house, DEA agent Hardin, the driver of the latter car, attempted to stop the Ford. Hardin testified that, because he had not been able to reach officers located at Dorris' house to warn them of the Ford's arrival, he thought it prudent to stop the car en route to the house. The driver of the Ford made an abrupt and rapid left turn and, by the time the officers were able to block the Ford from leaving, the group was only two blocks from Dorris' house.

Agent Hegseth drew his gun and ordered the Ford's occupants to leave the car and lie on the ground; the suspects complied, and the officers handcuffed them and frisked them for weapons. Hardin decided to transport both the Ford and its occupants to Dorris' residence for the following reasons: first, the group was only two blocks away from the house; second, it was a hot day; third, both the chemist and the case agent were at the house; and fourth, the suspects had been heading in the direction of the house at the time the officers stopped them.

Sacramento Police Officer Jones, a narcotics officer, drove Moses to Dorris' house. Jones noticed Moses, whose hands had been handcuffed behind him, fumbling around in the back pocket of his pants. When Jones asked Moses what he was doing, Moses did not answer. A short time later, Moses began reaching toward his back pocket again. When Jones noticed this movement, he took Moses out of the car and searched him, finding a Ford trunk key and a piece of paper. When everyone was gathered at Dorris' house, the officers searched the trunk of the Ford, using the key that Jones had retrieved. Nine pounds of piperidino-cyclohexane carbonitrile (PCC), a chemical used to manufacture PCP, were found inside the trunk.

The district court granted Moses' motion to suppress the key, finding first, that Moses had been subjected to a warrantless arrest and had not merely been detained incident to a search, second, that the offi-cers had not had probable cause to arrest Moses when they stopped the Ford, and third, that the key would not have been inevitably discovered. The government in this appeal insists that the district court's probable cause and inevitable discovery rulings are erroneous.

## II.

## DISCUSSION

### A. *Standard Of Review*

We review the district court's determination of probable cause de novo, *see United States v. McConney*, 728 F.2d 1195, 1203 (9th Cir.) (en banc), *cert. denied,* —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984), but we review for clear error those findings of fact on which the district court based its determination, *see United States v. Smith*, 790 F.2d 789, 791–92 (9th Cir. 1986).

### B. *Probable Cause*

"Probable cause to arrest arises when police officers have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *United States v. Fouche*, 776 F.2d 1398, 1403 (9th Cir.1985). The district court found that no probable cause existed for Moses' arrest.[2] We disagree.

 At the time that the officers detained the suspects in the Ford, they had seen Moses and two others buying chemicals consistent with the manufacture of PCP, and they had observed Moses and his cohorts purchasing large quantities of other items consistent with the manufacture of the drug. This is not a case in which a defendant bought, over a long period of time, several items consistent with ordinary household uses. During a single day, Moses' group bought a large quantity of chemicals (the search yielded nine pounds), *five* bottles of distilled water, *four* 32–gallon trash cans, a funnel, a mop *handle*, and

---

**2.** The government does not appeal the district court's finding that the agents' conduct before seizing the key constituted an arrest. We therefore do not reach that issue.

strainers. This tight-knit group then kept company for the rest of that night and into the next day. Although ordinary citizens might not associate this type of behavior with drug manufacturing, "it is important to recall that a trained law enforcement agent may be 'able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer.'" *United States v. Mendenhall,* 446 U.S. 544, 563, 100 S.Ct. 1870, 1882, 64 L.Ed.2d 497 (1980) (Powell, J., concurring) (*quoting Brown v. Texas,* 443 U.S. 47, 52 n. 2, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979)).

*United States v. Hillison,* 733 F.2d 692 (9th Cir.1984), does not support the claim that Moses' mere association with the group is insufficient to establish probable cause. In that case, we discussed the requirements for finding "probable cause based on association":

> One important consideration is whether the known criminal activity was contemporaneous with the association.... Another is whether the nature of the criminal activity is such that it could not normally be carried on without the knowledge of all persons present.

*Id.* at 697. Because Moses was consistently in the presence of the others, his "association" was "contemporaneous" with the alleged crime of conspiracy to manufacture drugs. More important, as the court observed in *Hillison,* "[i]t taxes credulity to assert that [the defendant] spent as much time in [the codefendants'] company as he did during the period of surveilance [sic] without knowing about their drug dealing activity." *Id.* Moses himself bought part of the equipment. *See* E.R. at 123. It "taxes" our "credulity" to assert that Moses could be present at the purchase of chemicals and at the purchase of abnormally large quantities and odd combinations of household items and not know that something illicit was underfoot. At the time the agents stopped the Ford, therefore, they had probable cause to arrest Moses. The agents' search—and their discovery of the key—was valid as a search incident to arrest.

■ Our conclusion that probable cause existed is not shaken by the fact that Officer McIntyire testified she did not believe probable cause to arrest existed before the search.[3] A scant three pages later in the record, she testified that she did have probable cause to search Moses.[4] Even if it were a fact that she did not believe she had probable cause to arrest him before the search, that belief does not end our inquiry. In *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), the officer testified at the suppression hearing that he did not think he had probable cause to arrest Royer before the search. *Id.* at 496, 103 S.Ct. at 1323 (plurality opinion of White, J.). This testimony did not foreclose further examination of the probable cause issue:

---

**3.** In Moses' case, Officer McIntyire elaborated on her belief that probable cause to arrest Moses before the search was lacking:

> THE COURT: And thus it was the search which gave you what you thought was reasonable and probable cause to arrest?
> THE WITNESS: Yes, there—I don't think it was only the search. I think [it was] the totality of the circumstances that we ha[d] observed of the surveillance during the past two days.
> THE COURT: I understand that. But until the search there was not in your mind reasonable and probable cause to obtain a warrant for an arrest.
> THE WITNESS: That's correct.

R.T. at 125.

**4.** McIntyire noted that she believed probable cause to *search* Moses did exist but explained why she did not obtain a search warrant for him at the same time she obtained one for Dorris:

> Q. And you didn't apply for a search warrant for any other person or any other individual; is that correct?
> A. No, I did not.
> Q. Why not?
> A. I had no idea who they were, their identification.
> THE COURT: Was that the only reason?
> THE WITNESS: Well, yes, it was.
> THE COURT: All right. In other words if you had known Mr. Moses' name, you would have applied for a search warrant of his person.
> THE WITNESS: Yes, I would have.

R.T. at 128.

[T]he fact that the officers did not believe there was probable cause and proceeded on a consensual or *Terry* [*Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889]-stop rationale would not foreclose the State from justifying [the defendant's] custody by proving probable cause and hence removing any barrier to relying on [the defendant's] consent to search.

*Id.* at 507, 103 S.Ct. at 1329 (plurality opinion of White, J.). Several lower courts have also concluded that independent scrutiny of the record can establish probable cause regardless of the arresting officer's belief. *See* 1 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 3.2(b), at 460–61 & n. 50 (1978); *id.* § 3.2, at 461 & nn. 50–50.2 (Supp.1986); *cf. United States v. Corral-Villavicencio,* 753 F.2d 785, 790 (9th Cir.1985) (scrutinizing the record to "find that these facts, ... *when added to the facts already known to the agents,* provided the required succession of events such that a prudent man could say that an innocent course of conduct was substantially less likely than a criminal one" (emphasis added)). It follows that McIntyire's testimony on the probable cause issue does not alter our conclusion that the agents had probable cause to arrest Moses at the time they stopped the Ford.

C. *Inevitable Discovery*

The government also argues that the key would have been inevitably discovered pursuant to a valid search of the automobile. Because our holding on the issue of probable cause is dispositive, we need not reach the issue of inevitable discovery.

REVERSED and REMANDED.

FARRIS, Circuit Judge, concurring:

Notwithstanding the subjective belief of Officer McIntyre, the agents had probable cause to arrest Moses at the time they stopped the automobile in which he was a passenger. *See Florida v. Royer,* 460 U.S. 491, 507, 103 S.Ct. 1319, 1329, 75 L.Ed.2d 229 (1983) ("[T]he fact that the officers did not believe there was probable cause ...

would not foreclose the State from justifying [defendant's] custody by proving probable cause."). Probable cause arose out of Moses' own actions, not out of his association with others. Reliance on *United States v. Hillison,* 733 F.2d 692 (9th Cir. 1984), is unnecessary. Under the totality of the facts and circumstances known, a prudent person would have been justified in concluding that there was a fair probability that Moses had committed or was about to commit a crime. *United States v. Fixen,* 780 F.2d 1434, 1436 (9th Cir.1986). *See also Brown v. Texas,* 443 U.S. 47, 52 n. 2, 99 S.Ct. 2637, 2641 n. 2, 61 L.Ed.2d 357 (1979) ("[A] trained, experienced police officer ... is able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer."). Accordingly, I agree that the ensuing search of Moses' person was lawful. *See United States v. Smith,* 790 F.2d 789, 791 (9th Cir.1986) ("[A] warrantless search is permissible if conducted incident to a lawful arrest.").

This conclusion standing alone requires reversal of the district court's suppression of the Ford trunk key found on Moses. As the key was lawfully obtained, we need not decide whether the key inevitably would have been discovered in the absence of police misconduct. *Cf. Nix v. Williams,* 467 U.S. 431, 442–43, 104 S.Ct. 2501, 2508–09, 81 L.Ed.2d 377 (1984). I join in Judge Sneed's holding reversing the order of the district court that the key be suppressed, but write separately as I see no need to ground our finding of probable cause on Moses' "association with the group."

FERGUSON, Circuit Judge, dissenting:

I dissent because the district court correctly found that the government agents lacked probable cause to arrest the defendant.

"Probable cause for a warrantless arrest exists if 'under the totality of the facts and circumstances known to the arresting officer, a prudent person would have concluded that there was a fair probability that the

suspect had committed a crime.' " *United States v. Fixen,* 780 F.2d 1434, 1436 (9th Cir.1986) (quoting *United States v. Gonzales,* 749 F.2d 1329, 1337 (9th Cir.1984)). Evidence obtained from an unlawful arrest is suppressed as fruit of the poisonous tree. *Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963).

I agree with the district court and the case officer in charge of the investigation here that the government agents lacked probable cause to arrest the defendant when they stopped the 1983 Ford. At that time, the only information the officers had about the defendant was that he (1) accompanied Dorris when he bought chemicals and five gallons of distilled water; (2) purchased four large trash cans and other household items from a drugstore; and (3) was a passenger in the Ford when the agents stopped it. These facts are clearly insufficient to establish probable cause that the defendant had committed or was committing a crime.

Unlike the majority, I believe that *United States v. Hillison,* 733 F.2d 692 (9th Cir.1984), requires that we affirm the district court. In that case, government agents observed two individuals acting nervously in the San Diego International Airport. The agents followed the individuals and observed them purchasing paper items. The next day, the two individuals mailed a package, which the agents segregated from the normal mail. When the two individuals vacated their motel room, the agents searched it and found wrapping paper and marijuana seeds. A narcotics detector dog then sniffed and alerted the agents to the package that the individuals had mailed. The agents obtained a search warrant for the package and discovered that it contained a large quantity of cocaine.

In *Hillison,* we held that buying supplies and acting nervously did not establish probable cause. *Id.* at 695. The agents acquired probable cause only after the dog alerted them to drugs in the package. *Id.*

at 696. At that point the agents knew that the suspects were committing a crime.

We also held in *Hillison* that under those facts the agents obtained probable cause to arrest a third individual whom they observed driving the two suspects around and spending considerable time with them. In so holding, we reaffirmed the well-established principle that mere association, even with persons known to be committing a crime, is insufficient to establish probable cause:

> In order to find probable cause based on association with persons engaging in criminal activity, some additional circumstances from which it is reasonable to infer participation in criminal enterprise must be shown.... One important consideration in assessing the significance of the association is whether the known criminal activity was contemporaneous with the association.... Another is whether the nature of the criminal activity is such that it could not normally be carried on without the knowledge of all persons present.... [T]he mere propinquity with known criminals does not, without more, give rise to probable cause.

*Id.* at 697 (citations omitted); *see also United States v. Epperson,* 485 F.2d 514, 515 (9th Cir.1973). *Hillison* established three requirements to infer participation from association. First, the association must rise to a sufficient level of contact with the individuals. 733 F.2d at 697 ("prolonged contact" between the individuals). Second, the third person's extensive association with the individuals must have occurred while they engaged in known criminal activity. *Id.* Third, the court found that the criminal activity there was the type "normally carried on with [ ] the knowledge of all persons present." *Id.* Moreover, the *Hillison* court noted that the third individual engaged in suspicious activity, such as renting a car under an alias and lying to officers when questioned. *Id.* at 697–98.

None of these three requirements are met here. First, the defendant's only asso-

ciation in this case was riding in a car subject to a search warrant with three individuals whose identity the government agents did not know; purchasing innocent household items; and accompanying Dorris to a chemical company and a grocery store. This tenuous association falls far below the level of involved contact required by *Hillison*. Second, the limited evidence in the record does not support any inference that police knew that anyone with whom the defendant was associating had committed a crime. Third, and most important, the criminal activities involved here—attempted manufacture and conspiracy to manufacture—may be "carried on without the knowledge of all persons present." *Id.* at 697. A reasonable person would not necessarily have been suspicious of the purchase of household items, and the record does not suggest that any readily recognizable drugs were ever produced.

The majority asserts that it "taxes credulity" to believe that Moses would not have been suspicious of illegal activity in light of the purchases of chemicals and "abnormally large quantities and odd combinations of household items." Majority op. at 285. Yet, the key distinction between *Hillison* and the present case is that in *Hillison* the individual should have been aware of criminal activity because the items involved—marijuana and a large quantity of cocaine—were contraband and clearly illegal. As far as I know, no law prohibits the purchases of chemicals or trash cans—even in abnormally large quantities and odd combinations, whatever those terms may mean.

The district court's finding of no probable cause is further buttressed by the testimony of Officer McIntyire, the case officer supervising the investigation, that she believed probable cause did not exist to arrest the defendant prior to discovering the PCC in the trunk. This court has maintained that the subjective impressions of arresting officers are immaterial to our determination of probable cause. *See United States v. Fixen*, 780 F.2d 1434, 1436 n. 1 (9th Cir.1986). However, the statement in this case that the officer believed probable cause did not exist—rather than being a self-serving statement, which might be somewhat suspect—is more akin to a declaration against interest, and we should consider such a statement in our determination.

The majority is apparently willing to accept the officer's statement that she thought the agents had probable cause to obtain a warrant to search Moses. Majority op. at 285. But the majority is unwilling to credit the same officer's testimony that she did not believe there was probable cause to arrest Moses. This paradoxical position is even more perplexing given the majority's acceptance of police officers' expertise in evaluating suspicious conduct: " 'it is important to recall that a trained law enforcement agent may be able to perceive and articulate meaning in a given conduct which would be wholly innocent to the untrained observer.' " *Id.* at 284 (quoting *United States v. Mendenhall*, 446 U.S. 544, 563, 100 S.Ct. 1870, 1882, 64 L.Ed.2d 497 (1980) (Powell, J., concurring)).

Moreover, the majority's reliance on *Florida v. Royer*, 460 U.S. 491, 507, 103 S.Ct. 1319, 1329, 75 L.Ed.2d 229 (1983), is misplaced. Although the plurality opinion in that case examined whether probable cause existed, the Court agreed with the officer's opinion that probable cause was lacking. Thus, the Court did not define how much weight to accord the officer's opinion or explain when a court should disregard an officer's opinion that probable cause was absent. Of course, there are some circumstances when a police officer's opinion that probable cause is absent should not be credited—for example, when the officer has an erroneous view of the law. However, such circumstances are not present here. The majority gives no reason why the "trained" opinion of the officer—that the seemingly innocent activity did not constitute probable cause—was mistaken.

I believe that the district court correctly concluded that the government agents lacked probable cause to arrest the defend-

ant when they stopped the Ford, and I would affirm.