**UNITED STATES of America, Plaintiff,**

v.

**Guillermo COLIN-VELASQUEZ, Defendant.**

**CR No. 92–345–FR.**

United States District Court,
D. Oregon.

March 9, 1993.

Charles H. Turner, U.S. Atty., J. Richard Scruggs, Asst. U.S. Atty., Portland, OR, for plaintiff.

Steven T. Wax, Federal Defender, Michael R. Levine, Asst. Federal Defender, Portland, OR, for defendant.

## OPINION

FRYE, District Judge:

On October 28, 1992, a federal grand jury returned a one-count indictment charging the defendant, Guillermo Colin–Velasquez, with the crime of possession of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B).

The matters before the court are the motions of Colin–Velasquez 1) to discover information regarding the informant (# 15); 2) to suppress evidence from illegal stop and search (ə 17); and 3) to suppress statements taken in violation of the Fifth Amendment (ə 19). On January 8, 1993, the court held an evidentiary hearing.

## FINDINGS OF FACT

On July 18, 1992, Officer Kim Presson of the Portland Police Bureau cited Colin–Velasquez for the offenses of prostitution and driving with a suspended license. Officer Presson advised Colin–Velasquez of his *Miranda* rights in English and provided him a Spanish language version of the *Miranda* rights to read. Colin–Velasquez acknowledged understanding his rights. Colin–Velasquez communicated with Officer Presson in English.

During the evening of July 30, 1992, Officer Dirk Anderson of the Portland Police Bureau and other police officers learned from a confidential reliable informant and corroborating surveillance that Colin–Velasquez would be transporting a kilogram of cocaine from a residence in the City of Portland to another location. Police officers began surveillance of the residence and soon observed Colin–Velasquez leave the residence carrying a large bundle. Colin–Velasquez entered a tan Oldsmobile Cutlass and drove away.

Sergeant James Hudson of the Portland Police Bureau followed Colin–Velasquez as he drove away. Officer Anderson had told Sergeant Hudson that Colin–Velasquez was believed to be carrying cocaine in the car, and he directed Sergeant Hudson to stop Colin–Velasquez. As he followed Colin–Velasquez, Sergeant Hudson observed Colin–Velasquez run two stop signs after it appeared that Colin–Velasquez noticed that he was being followed. At this point, Sergeant

Hudson activated the overhead lights on his police vehicle and turned on the siren. Colin–Velasquez pulled over to the curb and immediately stepped out of the vehicle. Sergeant Hudson asked Colin–Velasquez if he spoke English, to which Colin–Velasquez replied "Yes." Sergeant Hudson informed Colin–Velasquez that he had observed him run two stop signs. Colin–Velasquez appeared quite nervous. Colin–Velasquez produced a driver's license, which Sergeant Hudson believed was a fake. Sergeant Hudson, believing that Colin–Velasquez might attempt to flee, took him into custody. Officer Hudson then handcuffed Colin–Velasquez and orally informed him of his *Miranda* rights in English as follows:

> [Y]ou have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to an attorney, to have him present prior to any questioning. And if you can't afford an attorney, one will be appointed for you at no expense to you.

Transcript of Proceedings, pp. 37–38. Colin–Velasquez acknowledged understanding these rights. Sergeant Hudson then presented Colin–Velasquez with a Spanish language *Miranda* rights card. Colin–Velasquez stated that he had already read these rights before; however, Sergeant Hudson asked him to read the card anyway. Sergeant Hudson observed Colin–Velasquez read the card. Colin–Velasquez again acknowledged understanding his rights.

Sergeant Hudson asked Colin–Velasquez if he had any guns or drugs in his car, to which Colin–Velasquez replied "No." Sergeant Hudson then asked Colin–Velasquez if he minded if he searched his car. Colin–Velasquez replied "No." Confused as to what Colin–Velasquez meant by this response, Sergeant Hudson asked "So it's okay for me to search your car then?" Colin–Velasquez replied "Yes." Sergeant Hudson then asked him a third time if it was "okay" to search the vehicle. Colin–Velasquez again said "Yes," but then asked Sergeant Hudson if he had a "paper." Sergeant Hudson stated that he had no "paper," but that he did not need one if Colin–Velasquez gave his consent. Sergeant Hudson then asked Colin–Velas-

quez again if he could search his car. Colin–Velasquez replied "Yes." Sergeant Hudson then asked in Spanish "Puedo mirar su carro?" "Puedo mirar su carro" translates into English as "May I look at your car?" Colin–Velasquez nodded his head and said "Yes, go ahead" and pointed to the door of his car. Sergeant Hudson then searched the vehicle. At no time did Colin–Velasquez appear surprised that Sergeant Hudson was searching the vehicle, nor did Colin–Velasquez ever attempt to withdraw his consent to the search. Sergeant Hudson found a kilogram of cocaine inside a bag wrapped in a blanket on the rear seat of the automobile.

After his vehicle was searched, Colin–Velasquez was questioned by Sergeant Hudson in English. Colin–Velasquez at first denied knowledge of the cocaine and then made incriminating statements.

Approximately one hour after he arrested Colin–Velasquez, Officer Anderson met with Colin–Velasquez. Officer Anderson read Colin–Velasquez his *Miranda* rights in English, and Colin–Velasquez stated that he understood his rights. Following his advise of rights, Colin–Velasquez made incriminating statements.

## CONTENTIONS OF THE PARTIES

Colin–Velasquez moves to suppress the fruits of the search of his automobile and the statements he made to law enforcement officers. Colin–Velasquez contends that 1) the stop of his vehicle was an illegal pretextual stop; 2) the search of his vehicle was made without valid consent; and 3) he failed to understand or to validly waive his *Miranda* rights. Colin–Velasquez also moves for disclosure of the identity of the confidential reliable informant.

The government contends that 1) the stop and arrest of Colin–Velasquez was valid because there was probable cause for the police officers to believe that Colin–Velasquez had committed narcotic and traffic offenses; 2) the search of Colin–Velasquez's vehicle was valid based on both probable cause for the search and the consent given by Colin–Velasquez; and 3) Colin–Velasquez validly waived his *Miranda* rights. The government opposes disclosure of the name of the informant.

## ANALYSIS

### A. *Informant*

Colin–Velasquez seeks disclosure of the name of the informant in order to support his defense of entrapment. Colin–Velasquez intends to argue at trial that he was urged by a government agent to take possession of a package which later turned out to contain cocaine. To support his defense of entrapment, Colin–Velasquez notes that the fingerprints of the informant were found on the bundle containing the cocaine.

The government opposes disclosure of the name of the informant, contending that Colin–Velasquez has failed to demonstrate any need for disclosure and that disclosure will endanger the life of the informant.

■ The court must balance competing interests in evaluating a request to disclose the identity of an informant. *Roviaro v. United States,* 353 U.S. 53, 62, 77 S.Ct. 623, 628, 1 L.Ed.2d 639 (1957); *United States v. Johnson,* 886 F.2d 1120, 1122 (9th Cir.1989), *cert. denied,* 494 U.S. 1089, 110 S.Ct. 1830, 108 L.Ed.2d 959 (1990); *United States v. Fixen,* 780 F.2d 1434, 1439 (9th Cir.1986). The court must balance the interest of the public in protecting the flow of information with the interest of the defendant in preparing his defense. *Johnson,* 886 F.2d at 1122. Among the factors the court must weigh are the charges the defendant faces, possible defenses, and the significance of the informant's testimony. *See id.* A mere suspicion that an informant might possess helpful information is insufficient to require disclosure. *United States v. Wong,* 886 F.2d 252, 256 (9th Cir.1989). The defendant has the burden to demonstrate the need for disclosure. *Johnson,* 886 F.2d at 1122; *Fixen,* 780 F.2d at 1439.

■ The court accepts the representation of the government that there is concern for the safety of the informant. However, Colin–Velasquez has persuaded the court that disclosure prior to trial is appropriate here. Disclosure shall be made under the terms and conditions proposed by the government.

### B. *Probable Cause*

■ Colin–Velasquez contends that the police officers had no probable cause to stop and search his vehicle. Colin–Velasquez does not dispute that if the court accepts the testimony of Officer Anderson and Sergeant Hudson as truthful, there was probable cause to stop and search his vehicle. Colin–Velasquez points to certain omissions from the officers' police reports in support of his contention that the officers lied when they testified.

Certain information was omitted from the officers' police reports in order to protect the identity and safety of the informant. The court finds that the testimony of Officer Anderson and Sergeant Hudson was credible. The court finds that Sergeant Hudson had probable cause to stop and search the vehicle.

### C. *Consent*

■ Colin–Velasquez next contends that he did not voluntarily consent to the search of his vehicle. "The government has the burden of demonstrating that consent to a warrantless search was voluntary. Voluntariness is a question of fact to be determined from all the surrounding circumstances." *United States v. Kaplan,* 895 F.2d 618, 622 (9th Cir.1990).

The primary issue here is the ability of Colin–Velasquez to understand the English language. Based on the credible testimony of Officers Anderson and Presson and Sergeant Hudson, the court concludes that Colin–Velasquez speaks English well enough to have understood the conversation that he had with Sergeant Hudson regarding consent.

Sergeant Hudson took care to proceed with the search of the vehicle only after he was sure that Colin–Velasquez had consented to the search. He asked Colin–Velasquez several times if he had permission to search the vehicle. Sergeant Hudson did this to insure that Colin–Velasquez fully understood him. Sergeant Hudson displayed no weapons while seeking the consent of Colin–Velasquez, and he did not ask for consent until he had explained to Colin–Velasquez his *Miranda* rights. Although Sergeant Hudson

mistakenly asked Colin–Velasquez in Spanish if he could look *at* his car, this does not negate the consent that Colin–Velasquez had provided in English.

D. *Statements*

 Sergeant Hudson recited *Miranda* warnings to Colin–Velasquez from memory, erroneously stating that Colin–Velasquez had the right to an attorney *prior* to any questioning. Colin–Velasquez contends that his statements must be suppressed because *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), requires that he be informed that he had a right to have an attorney present *during* any questioning.

The United States Court of Appeals for the Ninth Circuit has held that advisement of the right to have counsel present *during* questioning "is mandated by the Constitution." *United States v. Noti*, 731 F.2d 610, 615 (9th Cir.1984); *accord United States v. Bland*, 908 F.2d 471, 474 (9th Cir.1990). Here, Sergeant Hudson first informed Colin–Velasquez that he had the right to have an attorney present prior to questioning. However, immediately thereafter, Sergeant Hudson presented Colin–Velasquez with a *Miranda* rights card in Spanish and asked him to read the card. After reading the card, Colin–Velasquez then acknowledged understanding his rights. Because Colin–Velasquez was provided with accurate *Miranda* warnings in his native language immediately after receiving the incomplete warnings, the court finds no violation of his constitutional rights. *See United States v. Lopez–Diaz*, 630 F.2d 661, 664 (9th Cir.1980) ("even though the second of the three warnings given to [the defendant] was inaccurate, he was adequately apprised of his *Miranda* rights").

## CONCLUSION

The motion of Colin–Velasquez to discover information regarding the informant (# 15) is GRANTED to the extent set forth in this opinion. The motions of Colin–Velasquez to suppress evidence from illegal stop and search (# 17) and to suppress statements taken in violation of the Fifth Amendment (# 19) are DENIED.