Henry P. JAEGER and M. Darlene Jaeger, Appellants,

v.

The CANADIAN BANK OF COMMERCE (CALIFORNIA), Appellee.

No. 18851.

United States Court of Appeals Ninth Circuit.

Feb. 11, 1964.

Dean M. Alexander, Portland, Or., for appellants.

Freed & Campbell, Edgar Freed and William D. Campbell, Portland, Or., for appellee.

Before JERTBERG, MERRILL and KOELSCH, Circuit Judges.

KOELSCH, Circuit Judge.

The principal issue on this appeal relates to the scope of a provision for attorneys fees in a promissory note. Jurisdiction of the trial court was based on diversity of citizenship of the parties.

Briefly stated, the facts are these. The Canadian Bank of Commerce, plaintiff herein, had made a loan of $115,000 to one Hibbard on the security of four notes executed respectively by Wallace D. Campbell, Howard Jessie Coldiron, Leland Houk, Henry P. Jaeger, and their wives. These notes aggregated the sum of the loan and varied in amount. Shortly afterward plaintiff received from Hibbard and persons designated "Trustees of the Wayne C. Hibbard Trust" additional collateral consisting of a certificate issued to "Hibbard, Trustee," for 75,000 shares of stock of the Universal Fidelity Life (Insurance) Company. Before his loan became due, Hibbard died and thereafter plaintiff made demand for payment on the four securities. Campbell, Coldiron and Houk paid, but Jaeger did not. Plaintiff then commenced this suit against Jaeger and wife, seeking judgment against them for $10,000, the principal amount of their note, plus interest and cost, including $1,150 for legal services rendered and to be rendered by its attorney in said suit. Defendants answered, admitting liability in the full amount of the face of the note and interest, but denying that any sum in excess of $300 was reasonable as an attorney's fee. Additionally and by way of counter-claim they sought the shares of stock plaintiff held as collateral, on the theory that they were entitled to be subrogated to plaintiff's right to it upon payment of their own note. At the same time, defendants deposited in the Registry of the Court, by way of tender, the full principal amount of the note and part of the interest, and later the remainder of the interest. However, at no time did they make any tender of attorney's fees. After the answer was filed the issues remaining in the case were those of attorney's fees in the matter of the counter-claim.

It is unnecessary to detail the numerous steps that defendants took and the proceedings that were had before trial, but suffice to say they were initiated by defendants, extended over a period of several months, and consumed a considerable amount of time of plaintiff's attorney. They were concerned for the most part with the counter-claim and included several motions and hearings, an abortive attempt to interplead strangers to the suit, and were such as to cause Campbell, Coldiron and Houk to intervene. The case when finally tried occupied a little less than one day, and the main dispute revolved over the counter-claim. In fact, the defendants did not contest plaintiff's claim for attorney's fees, and the only evidence submitted by either party on that issue was an affidavit of plaintiff's attorney introduced pursuant to stipulation of the parties in the final pre-trial order.

After the case was submitted, the District Court, in a written opinion, stated that the counter-claim was utterly without merit and "that the sum of $2,000 [was] a reasonable sum to be allowed plaintiff as attorney's fees in the institution and prosecution of this action to the final adjudication of all issues * * *." However, the judgment as docketed was

in the sum of $3,500. This increase is explained by the formal findings of fact, for in them the court declared:

"The defendant's resistance to the plaintiff's action is fully reflected in the file and has occasioned a very much greater volume of work than would normally be encountered by plaintiff's attorneys on an ordinary action upon a note. The tactics of resistance reflected in the file include, among other things, extensive difficulty in settling a pre-trial order, a motion to vacate the first pre-trial order, signed by the court, a motion for interpleader and a counter-claim and cross-claim in the nature of a bill of interpleader, which was subsequently conceded by defendants at the argument not to be allowable and was denied. On this phase of the case an order of partial final judgment was entered on plaintiff's motion therefor. Upon counsel's affidavit, submitted in evidence on the question of attorney's fees by stipulation contained in the final pretrial order, and upon review of the file, the court finds as a fact that the evidence supports an allowance of attorney's fees of $3500, and that no contrary evidence was introduced."

▆▆▆▆ Plaintiff's right to attorney's fees was of course based solely on the contractual provision contained in defendants' note. Draper v. Mullennex, 225 Or. 267, 357 P.2d 519, (Ore.1960); Commercial Standard Insurance Co. v. Cleveland, 86 Ariz. 288, 345 P.2d 210 (Ariz.1959). In terms, the agreement was that " * * * In case suit or action is instituted to collect this note, or any portion thereof, we promise and agree to pay, in addition to the costs and disbursements provided by statute, such additional sum in like money as the court may adjudge for attorney's fees to be allowed in said suit or action." This language is clear. It imposes upon the makers of the note an obligation to pay for all services rendered by the holder's attorneys in commencing and prosecuting an action to recover judgment on the note. It does not extend to unrelated matters and to legal expense incurred by the holder in connection with them, for it is elementary that a party to a contract is held only to that liability which falls fairly within the terms of the contract. "Courts have no power to make new contracts or to impose new terms upon parties to contracts without their consent." City of New Orleans v. New Orleans Water Works Co., 142 U.S. 79, 12 S.Ct. 142, 35 L.Ed. 943 (1891).

Thus, in German-American Bank v. Martin, 129 Mo.App. 484, 107 S.W. 1108 (1908, Kansas City Court of Appeals, Mo.) it was held that the holder of a note containing a provision for attorney's fees was not entitled to charge the maker for the services of its attorneys necessarily required to protect its security, because the note did not cover such a contingency. As the court observed:

"The services rendered were in a collateral proceeding, and not in direct effort to collect the note. The language used, 'if this note is not paid at maturity, the undersigned agree to pay reasonable expenses of collection, including attorney's fees,' had reference to expense incurred by the plaintiff in collecting the note. It was in the contemplation of the parties that if the note was not paid at maturity, and plaintiff should be put to the expense of compelling its collection by the assistance of an attorney, then such expense, if reasonable, should become a part of the debt."

Plaintiff relies on Taylor v. Continental Supply Co., 16 F.2d 578 (8th Cir. 1926), as authority supporting the District Court's award. There, the Eighth Circuit observed that a provision for attorney's fees in a note covered the holder's costs of defending against a counterclaim, a statement with which we fully agree, as a general rule. For in that case, as in all such cases coming to our attention, the counter-claim was directly asserted against the note by way of offset in an attempt by the maker to reduce

or extinguish his debt. (See 41 A.L.R.2d 578). Clearly such services were within contemplation of the parties, because "[t]o collect the notes it was necessary to bring suit and to defend against the counter-claim." 16 F.2d at pages 580–581.

 Taylor differs somewhat from the case at bar, for here the counter-claim was not directed against the defendants' indebtedness at all and, even if they had prevailed, the plaintiff would have been entitled to judgment in its favor. However, there is a fundamental similarity between the two cases because unless plaintiff was willing to yield to defendant on the issue of attorney's fees, it was obliged to dispose of the counter-claim in order to secure judgment on its note. The situation would be different had defendants' tender been agreeable to plaintiff's complaint, thus enabling plaintiff to secure an early judgment as permitted by Rule 54(b) F.R.Civ.P., leaving the counter-claim as the only subject for litigation, for conceivably there were other ways to separate the other two remaining issues and expedite plaintiff's recovery, but defendants did not choose to follow it. Instead, they forced plaintiff to participate in numerous preliminary proceedings and finally to try the issue in order to collect its note. In sum, we think the services were within the contemplation of the parties and that the court's awards were fully supported and justifiable under the facts.

One matter remains. Plaintiff urges the court to invoke its discretionary power granted by 28 U.S.C.A. § 1912 to assess "just damages" against defendants for prosecuting this appeal, the contention being that the appeal was entirely lacking in substance and needlessly taken for the purpose of delay. We must disagree. The outcome was hardly obvious. From the striking lack of any cases in counsel's brief, it would appear that the precise problem involved in this appeal, far from being commonplace and previously solved, is unique; and our independent research, far from revealing a wealth of authority to provide an easy answer, has brought to light no clear guideposts. In short, we do not deem this appeal frivolous, or one which would lend itself to a judgment mulcting the defendants of damages, as for example, Lowe v. Willacy, 239 F.2d 179, 16 Alaska 499 (9th Cir. 1956).

The judgment is affirmed.