**Pearl KEHR, Plaintiff/Appellee,**

v.

**SMITH BARNEY, HARRIS UPHAM & CO., INCORPORATED; Glenn Nordskog; and Jim Martin, Defendants/Appellants.**

No. 83–5930.

United States Court of Appeals,
Ninth Circuit.

Submitted April 3, 1984.

Decided June 25, 1984.

As Amended July 5, 1984.

Michael J. Abbott, Jones, Bell, Simpson & Abbott, Los Angeles, Cal., for defendants/appellants.

Jose Y. Lauchengco, Los Angeles, Cal., for plaintiff/appellee.

Before ELY, SCHROEDER and NELSON, Circuit Judges.

NELSON, Circuit Judge:

A jury found Smith Barney, Harris Upham & Co., Inc. and two of its employees ("Smith Barney") liable to Pearl Kehr under section 10(b) and Rule 10b–5 of the Securities Exchange Act of 1934 for improperly involving her in sophisticated options transactions, the riskiness of which she was unable to understand. On appeal, Smith Barney contends that the district court improperly 1) denied its motion for a new trial based on the misconduct of Kehr's attorney at trial; 2) denied its motion for judgment notwithstanding the verdict based on Kehr's failure to prove scienter; and 3) refused to consider its motion to compel arbitration of Kehr's pendent state claims. We affirm.

## FACTS AND PROCEDURE

Pearl Kehr, a client of Smith Barney, sued the firm and two of its employees in 1981 alleging violations of both federal and state securities laws resulting in losses of over $100,000 to her accounts. She claimed that Smith Barney had misled her into believing that her speculative investments were in fact safe.

The district court originally ruled that it would exercise pendent jurisdiction to retain all of the state claims in the federal court action. The case was then unexpectedly transferred to a new district judge, who decided to reconsider whether pendent jurisdiction over the state claims had been properly assumed. Smith Barney moved to dismiss the state claims and requested, in addition, that the state claims be ordered to arbitration in accordance with Kehr's Customer Agreement with the firm.[1] The court dismissed the state claims, but found moot the motion to order the state claims to arbitration because the court, by dismissing the claims, had lost jurisdiction over them. Kehr subsequently brought these claims in California Superior Court.

The jury found Smith Barney and its employees to have violated section 10(b) and Rule 10b–5 of the Securities Exchange Act of 1934 and therefore liable to Kehr for over $100,000 in damages. Smith Barney moved for judgment n.o.v. based on Kehr's alleged failure to prove scienter, and for a new trial based on misconduct committed by Kehr's attorney. The court found "no basis" for judgment n.o.v., and, while deeming counsel's behavior "outrageous," nevertheless concluded that any misconduct was not "sufficiently prejudicial to deny defendants a fair trial." This appeal followed.

## DISCUSSION

I. *The district court did not abuse its discretion by denying Smith Barney's motion for a new trial.*

Smith Barney submits that Kehr's attorney, Jose Lauchengco, committed prejudicial acts of misconduct resulting in the denial of a fair trial. The record reflects that, largely during his opening statement and closing argument, Lauchengco: 1) indulged in criminal imagery; 2) commented on the financial disparity between the parties; 3) dwelled upon irrelevant subjects; 4) conducted himself with a lack of decorum; and 5) made unsubstantiated accusations of tampering with documents against Smith Barney and its counsel.

The district court was aware that Lauchengco's statements were improper. It declined, however, either to intervene *sua sponte* to prevent further misconduct or to make a curative statement to the jury as requested by Smith Barney. After the jury returned a verdict in favor of Kehr, the court denied Smith Barney's motion for a new trial.

---

**1.** Although the agreement Kehr signed committed her to arbitrate *any* disputed claims which might arise from her accounts, disputes arising out of the federal Securities Exchange Act of 1934 have been found not arbitrable despite an agreement to the contrary. *See Wilko v. Swan,* 346 U.S. 427, 438, 74 S.Ct. 182, 188, 98 L.Ed. 168 (1953).

■ This court reviews for an abuse of discretion the denial of a post-trial motion for a new trial. *McKinley v. City of Eloy*, 705 F.2d 1110, 1117 (9th Cir.1983). To warrant reversal on grounds of attorney misconduct, the "flavor of misconduct must sufficiently permeate an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict." *Standard Oil Co. of California v. Perkins*, 347 F.2d 379, 388 (9th Cir.1965).

■ We have no trouble concluding that Lauchengco's remarks were improper. The only question before us, therefore, is whether the instances of misconduct so permeated the trial that the jury was necessarily prejudiced. The district court found that the comments did not sufficiently prejudice the jury as to warrant a new trial. After reviewing the entire record, we cannot say that the court abused its discretion in reaching that determination.

First, the offending remarks occurred principally during opening statement and closing argument, rather than throughout the course of the trial. They were isolated, rather than persistent. Second, while constant objections are certainly not required, as they could antagonize the jury, *see Leathers v. General Motors Corp.*, 546 F.2d 1083 (4th Cir.1976), we note that opposing counsel here never objected during the closing argument or moved for a mistrial. Third, unlike some cases where attorney misconduct required a new trial, the jury's award of damages in this case was not excessive. *Cf. City of Cleveland v. Peter Kiewit Son's Co.*, 624 F.2d 749, 759 (6th Cir.1980).

Given that the trial court is in a far better position to gauge the prejudicial effect of improper comments than an appellate court which reviews only the cold record, we conclude that the district court did not abuse its discretion by refusing to grant a new trial.

## II. *The district court correctly denied Smith Barney's motion for judgment n.o.v.*

■ Smith Barney contends that the district court erred in denying its motion for judgment n.o.v. pursuant to Federal Rule of Civil Procedure 50(b). That motion was made on the ground that Kehr failed to prove that Smith Barney had acted with "scienter" as required under section 10(b) by *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) ("*Hochfelder*"). Because a district court must deny a motion for judgment n.o.v. if there is sufficient evidence to support the verdict, *Simpson v. Union Oil of California*, 411 F.2d 897, 907–08 (9th Cir.1969), Smith Barney's claim is without merit.

■ *Hochfelder* held that section 10(b) was intended to proscribe knowing or intentional misconduct. 425 U.S. at 197, 96 S.Ct. at 1382. The Supreme Court has left open the question whether recklessness satisfies the scienter requirement. *See Aaron v. SEC*, 446 U.S. 680, 686 n. 5, 100 S.Ct. 1945, 1950 n. 5, 64 L.Ed.2d 611 (1980). This court, however, has concluded that reckless conduct does fall within the ambit of section 10(b). *See Nelson v. Serwold*, 576 F.2d 1332, 1337 (9th Cir.), *cert. denied*, 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978). The district court in this case therefore properly instructed the jury that scienter was present if the manner in which Smith Barney handled Kehr's account reflected a "reckless disregard for the client's investment concerns."

■ There was evidence at trial that Kehr had a limited education and may not have been able to understand the mechanics of sophisticated, speculative investments. Viewing this evidence in the light most favorable to Kehr, *see Naton v. Bank of California*, 649 F.2d 691, 697 (9th Cir. 1981), the jury had sufficient facts from which to conclude that Smith Barney's failure to apprise Kehr of the risky nature of her transactions constituted "reckless" conduct.[2] Therefore, the denial of the motion for judgment n.o.v. was proper.

---

**2.** Smith Barney's reliance on *Brophy v. Redivo,* 725 F.2d 1218 (9th Cir.1984), is misplaced.

**III.** *The district court lacked jurisdiction to compel arbitration.*

 The district court ruled that it had no jurisdiction to send the state claims to arbitration once it had ordered their dismissal. A finding of no jurisdiction, a question of law, is reviewed *de novo.*

 Section 4 of the United States Arbitration Act enables a party aggrieved by another's refusal to arbitrate under a written agreement to petition any federal district court for an order compelling arbitration. 9 U.S.C. § 4 (1976 & Supp.1982). A district court may employ this provision, however, only when an independent basis of federal jurisdiction already exists. *E.g., Metro Industrial Painting Corp. v. Terminal Construction Co., Inc.,* 287 F.2d 382, 384 (2d Cir.1961).

Smith Barney first argues that the district court, despite its refusal to assert pendent jurisdiction over the state claims, retained the "power" to send the claims to arbitration. This contention is unconvincing.

 In *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court explained that the exercise of pendent jurisdiction involves a two-step approach. The court must first decide whether the state and federal claims present a "common nucleus of operative facts" so as to constitute but one constitutional "case"; such a determination gives the court the power to assume jurisdiction. Second, the court must consider whether, in the exercise of its discretion, it should assert that power. The discretionary factors weighing against the assumption of jurisdiction include the possibility of jury confusion, *Moor v. Alameda County,* 411 U.S. 693, 716–17, 93 S.Ct. 1785, 1799, 36 L.Ed.2d 596 (1973), the ground upon which the district court in this case relied. Thus, the power of a federal court to hear a pendent state claim need not be exercised in every case.

One court has expressed this distinction between the constitutional power to take jurisdiction and the discretionary exercise of that power in the following terms: "It is true that a federal court may decline to take jurisdiction over a pendent state claim, but this does not deprive it of the power to hear the pendent claim if it chooses to ...." *Fortin v. Comm'r. of Mass. Dept. of Public Welfare,* 692 F.2d 790, 798 (1st Cir.1982).

 While it is clear from context that *Fortin* meant only to emphasize the discretionary nature of pendent jurisdiction, Smith Barney attempts to cite this language for the proposition that a court retains power over a state claim even after it declines to exercise jurisdiction over that claim. Neither *Fortin* nor any other case supports this thesis. On the contrary, once a court refuses to exercise its power to assume pendent jurisdiction, it must dismiss the state claims. The court cannot decline to exercise its power for purposes of jurisdiction, yet reassert its power for purposes of ordering the dismissed claims to arbitration.

Smith Barney also argues that our recent decision in *Byrd v. Dean Witter Reynolds, Inc.,* 726 F.2d 552 (9th Cir.1984), dictates the result in this case. In *Byrd,* we held that when nonarbitrable federal securities claims are brought together with arbitrable pendent state claims, the district court must determine whether to try them all together or send the pendent claims to arbitration. Smith Barney contends that after *Byrd* these two alternatives represent a district court's only options. It argues, therefore, that the district court's retention of the nonarbitrable claims and dismissal of the arbitrable claims was impermissible. This contention ignores the obvious distinction that in *Byrd* the district court *chose* to exercise pendent jurisdiction over the state claims. If the court in *Byrd* had declined

---

There we held that a brokerage firm's unauthorized trading in an investor's account, without more, does not constitute a section 10(b) violation. Kehr's claim was not that

Smith Barney had traded without her consent, however, but rather that her consent was improperly obtained through assurances that the proposed investments were safe.

to assume jurisdiction, it too would have been forced to dismiss the claims.

Smith Barney's reliance on *Kershaw v. Dean Witter Reynolds, Inc.*, 734 F.2d 1327 (9th Cir.1984) is similarly misplaced. In that case, we found that the district court erred in not ordering state securities claims to arbitration after the plaintiffs had dismissed their federal securities claims.

In *Kershaw*, however, the district court's jurisdiction over the state claims was based on diversity of citizenship. Thus, unlike the district court here, the court in *Kershaw* had an independent basis of jurisdiction.

■ Finally, Smith Barney contends that diversity of citizenship provided the jurisdictional basis for a district court order compelling arbitration. While it may be true that Kehr is a California domiciliary and Smith Barney is a New York corporation (with its principal place of business outside California), Smith Barney was sued together with two of its California-resident employees. Because complete diversity is a statutory requirement under 28 U.S.C. § 1332, *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806), diversity of citizenship as a jurisdictional basis was not present in this case. The district court therefore correctly found that it was without jurisdiction to consider the motion to compel arbitration.[3]

IV. *Attorney's fees for Kehr are not warranted.*

■ Kehr seeks attorney's fees for services rendered in responding to this appeal on the ground that the appeal is frivolous. *See* 28 U.S.C. § 1912; Fed.R.App.P. 38. This court considers an appeal frivolous when the result is obvious, *Jaeger v. Canadian Bank of Commerce*, 327 F.2d 743, 746 (9th Cir.1964), or the appellant's arguments of error are wholly without merit. *See Libby, McNeill, and Libby v. City National Bank*, 592 F.2d 504, 515 (9th Cir.1978). Given the substantial merit

of the attorney misconduct claim, Kehr is not entitled to attorney's fees.

AFFIRMED.

ELY, Circuit Judge, concurring:

I concur in the result reached in Judge Nelson's carefully written Opinion. At the same time, however, I disassociate myself from some of the majority's comments in respect to the conduct of the appellee's attorney. At one point, the majority characterizes some of the attorney's comments as "offending," and at another point, the majority writes "We have no trouble concluding that Lauchengco's remarks were improper." Since I have more than even slight "trouble" in so concluding, I cannot conscientiously endorse or approve the quoted sentence.

The appellee alleged, in effect, that she had been swindled by the appellants, designated collectively by the majority as "Smith Barney." Smith Barney is a large, nationally respected investment firm, and the jury determined, as alleged, that two individual agents of the firm had betrayed the trust that the appellee, an unsophisticated lady, had reposed in Smith Barney. Comments made by attorneys in opening statements are, of course, not evidence, and no citation is required for the elementary proposition that attorneys are allowed wide latitude in their closing arguments to juries. This being true, it seems to me that when one has been so victimized and mistreated, as was the appellee in the present case, the wrongdoer deserves to be condemned by the victim's attorney in the harshest terms. That is why I cannot in good conscience agree that the remarks of the appellee's attorney were legally "offending" or that I have "no trouble" in "concluding" that the "remarks were improper."

---

**3.** Smith Barney also claims that it has not waived its right to arbitrate. This is a question properly before the California state court pres-

ently entertaining Smith Barney's motion to compel arbitration. It is not an issue with which we need grapple.